IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARY GREEN,<br><br>        Plaintiff,<br><br>   v.<br><br>PHILLIP POORMAN,<br>LT. GREGORY ESPOSITO,<br>and SHUKRIYA JENKINS,<br><br>        Defendants. | Civil Action No. 20-cv-85-RGA |

MEMORANDUM ORDER

Before me is the motion of Defendants Poorman and Esposito to dismiss Plaintiff's civil rights claims, or in the alternative, conduct an evidentiary analysis on the issue of exhaustion.[1] (D.I. 3). Plaintiff opposes this motion. (D.I. 4). I deny Defendants' motion to dismiss, and grant Defendants' motion to conduct an evidentiary analysis on the issue of exhaustion.

## I.    BACKGROUND[2]

Plaintiff Cary Green, at all times relevant to this action, was a prisoner in custody of the Delaware Department of Correction being held at Howard R. Young Correctional Institution ("HRYCI") in Wilmington, Delaware. (D.I. 1, Ex. A ¶ 1). After entering HRYCI on May 30, 2017, Plaintiff was placed into a cell "at some point" with Gerald Nash. (*Id.* ¶ 3). Nash told him about "some illegal activities" he participated in, and Plaintiff kept notes about these conversations. *Id.* Nash discovered these notes on October 8, 2017. (*Id.* ¶ 4). Nash threatened

---

[1] Defendant Jenkins is not represented by counsel and the record does not appear to reflect that she has been served.
[2] In this section, I assume the facts alleged by Plaintiff, and interpret them in the light most favorable to him.

1

to harm him if he did not help Nash escape.  *Id*.  Plaintiff "believed Nash's threats to harm him and his family, so he complied with all of Nash's demands."  *Id*.

Plaintiff was "scared" to tell on-duty Correctional Officer Shukriya Jenkins what was happening because "he knew she was having a relationship with Nash and the two of them were exchanging letters."  (*Id*. ¶ 6).  Nash gathered all the bed sheets and mattress covers in their cell and placed them inside a laundry bag.  (*Id*. ¶ 5).  While both Plaintiff and Nash were in the recreational area, another inmate brought the laundry bag outside.  (*Id*. ¶¶ 6-7).  After questioning Nash about the laundry bag, Officer Jenkins said, "I didn't see anything," and proceeded back inside.  (*Id*. ¶ 8).  Nash then forced him to go onto the roof of the prison.  (*Id*. ¶ 9).  While on the roof, Nash tied the bedsheets and mattress covers together to form a makeshift rope.  *Id*.  When Plaintiff tried to climb down the rope, it broke immediately, causing him to fall approximately three stories to the ground.  *Id*.

After alerting prison officers to his situation, that is, an "escapee" who wanted to reenter the prison, numerous prison officers responded.  One of them, Sgt. Phillip Poorman, "began repeatedly smashing [Plaintiff's] face into the fence."  (*Id*. ¶ 11).  Once Plaintiff was placed in a police car, Sgt. Poorman "began punching [Plaintiff] in the neck, torso, and back."  (*Id*. ¶ 12).  Sgt. Poorman ordered another officer to pepper spray him in the face.  *Id*.  Lieutenant Gregory Esposito was present during these incidents, but "instead stood by" and allowed it to happen.  *Id*.  Later, while Plaintiff was in an ambulance, Sgt. Poorman continued to "assault and terrorize" him.  (*Id*. ¶ 13).

Plaintiff filed this action in the Superior Court of Delaware on October 4, 2019.  Plaintiff named three defendants: Sgt. Poorman, Officer Jenkins, and Lt. Esposito.  Plaintiff alleges excessive force violations under 42 U.S.C. § 1983 and violations of his 8th Amendment right to

be free from cruel and unusual punishment. (*Id*. ¶¶ 20-30). Plaintiff also brings claims of assault, battery, and intentional infliction of emotional distress against Sgt. Poorman. *Id*. Defendants removed the action to this Court on January 21, 2020. (*See* D.I. 1). Defendants now seek to dismiss Plaintiff's claims, or in the alternative, to obtain discovery limited to the issue of exhaustion. (D.I. 3). This Court has jurisdiction over the matter pursuant to 28 U.S.C. §§ 1343 & 1367.

## II.   DISCUSSION

Rule 8 of the Federal Rules of Civil Procedure requires a complainant to provide "a short and plain statement of the claim showing that the pleader is entitled to relief . . . ." Fed. R. Civ. P. 8(a)(2). Rule 12(b)(6) allows the accused party to bring a motion to dismiss the claim for failing to meet this standard. A Rule 12(b)(6) motion may be granted only if, accepting the well-pleaded allegations in the complaint as true, and viewing them in the light most favorable to the complainant, a court concludes that those allegations "could not raise a claim of entitlement to relief . . . ." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 558 (2007). A plaintiff has an obligation to provide more than mere "labels and conclusions, and a formulaic recitation of a cause of action's elements will not do." *Id.* at 545.

A complainant must plead facts sufficient to show that a claim has "substantive plausibility." *Id*. at 12. That plausibility must be found on the face of the complaint. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id*.

The James T. Vaughn Correctional Center ("JTVCC"), where Plaintiff is currently held, has an Inmate Grievance Procedure (Policy No. 4.4). (D.I. 3 ¶ 6). This policy requires inmates

3

to follow a three-step process for grievances, with the JTVCC staff being afforded 180 days to complete an investigation and respond. *Id*. Under the Prison Litigation Reform Act, "No action shall be brought with respect to prison conditions under section 1983 ... by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997e(a). The exhaustion requirement applies to "all inmate suits about prison life, whether they involve general circumstances or particular episodes, and whether they allege excessive force or some other wrong." *Porter v. Nussle*, 534 U.S. 516, 532 (2002). "[A] prisoner must complete the administrative review process in accordance with the applicable procedural rules, including deadlines, as a precondition to bringing suit in federal court." *Woodford v. Ngo*, 548 U.S. 81, 88 (2006). "Proper exhaustion means using all steps provided by the prison so that prison officials address the issues on the merits." *Bickel v. Miller*, 446 F. App'x 409, 412 (3d Cir. 2011). The failure to properly exhaust has been referred to as a "procedural default." *See Spruill v. Gillis*, 372 F.3d 218, 227-35 (3d Cir. 2004).

Defendants argue Plaintiffs failed to exhaust administrative remedies prior to filing suit. (D.I. 3 ¶ 5). Failure to exhaust administrative remedies is an affirmative defense, and "inmates are not required to specially plead or demonstrate exhaustion in their complaints." *Jones v. Block,* 549 U.S. 199, 216 (2007). However, while plaintiffs do not have to plead exhaustion of administrative remedies, the Third Circuit has declined to "suggest that defendants may not raise failure to exhaust as the basis for a motion to dismiss in appropriate cases*." Ray v. Kertes*, 285 F.3d 287, 295 n.8 (3d Cir. 2002). When deciding a Rule 12(b)(6) motion, an affirmative defense "is appropriately considered only if it presents an insuperable barrier to recovery by the plaintiff." *Flight Sys., Inc. v. Elec. Data Sys. Corp.,* 112 F.3d 124, 127 (3d Cir.1997).

Here, a plaintiff's failure to exhaust all administrative remedies is an insuperable barrier to recovery. *See* 42 U.S.C. § 1997e(a). Thus, it is proper to consider the affirmative defense at this stage of the pleadings.

A district court ruling on a motion to dismiss generally "relies on the complaint, attached exhibits, and matters of public record." *Sands v. McCormick*, 502 F.3d 263, 268 (3d Cir. 2007). A court may also consider a document if its contents are alleged in the complaint and its authenticity is not contested. *Pryor v. National Collegiate Athletic Ass'n*, 288 F.3d 548, 560 (3d Cir. 2002). Here, Plaintiff's complaint does not have any attached exhibits or references to exhaustion. (*See* D.I. 1, Ex. A). However, in the answering brief, Plaintiff attached a copy of his Grievance Form and the response. (*See* D.I. 4, Ex. A). Because these documents were not included or referenced in the complaint, the Court cannot consider them on a Rule 12(b)(6) motion to dismiss. However, Rule 12(d) states: "If on a motion under Rule 12(b)(6) ... matters outside the pleadings are presented to and not excluded by the court, the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). Therefore, in order to consider the documents presented by Plaintiff in his answering brief, the Court would need to convert Defendants' motion to dismiss into a motion for summary judgment under Rule 56. Even if I were to do that, I doubt that the record is sufficiently developed to do so. *Cf.* Fed. R. Civ. P. 56(d). Thus, as I explain below, I will enter an order permitting discovery limited to exhaustion.

After Plaintiff submitted the Grievance Form, the response received from the Delaware Department of Correction is titled "Return of Unprocessed Grievance." (*See* D.I. 4, Ex. A). The "Request" box is checked, which states: "Requests are not processed through the grievance procedure. Please correspond with the appropriate office to secure the information that is

requested." *Id*. The "Staff Investigation" box is also checked, which states: "To request that the actions of staff personnel be investigated write to your Unit Commander with that request. If you receive no response or are dissatisfied with the response of your Unit Commander you may appeal that decision to the Operating Superintendent and ultimately to the War[den]." *Id*. Additionally, the "Other" box is checked as well. *Id*. However, Plaintiff's exhibit appears to be incomplete because the complete directions provided by the "Other" box are not included with the rest of the form. *Id*.

For the "Staff Investigation" box that was checked, Plaintiff argues, "Nothing therein indicates that such submissions are mandatory or that an inmate loses civil rights if that procedure is not followed." (D.I. 4 ¶ 6). Plaintiff contends that if the "HRYCI system works as specified in Defendants' Exhibit 'B', there is no need for an inmate to submit his or her grievance to s supervisor because the system does so automatically." *Id*.

Defendants assert that Plaintiff acknowledges he received this response because Plaintiff stated, "The Staff Investigation box was checked on the Return of Unprocessed Grievance form provided to [Plaintiff]." (D.I. 4 ¶ 6; *see* D.I. 6 ¶ 3). Defendants argue, "Plaintiff does not contend that he followed any step of this multi-level review process for investigating staff actions prior to filing suit." (D.I. 6 ¶ 3). Thus, the DOC staff was not afforded a full and fair opportunity to adjudicate Plaintiff's grievance. *Id*.

The issue of exhaustion is not a jury issue; I must decide it. *Small v. Camden Cty*., 728 F.3d 265, 271 (3d Cir. 2013). I think it is a more complex issue in this case than appears from the Parties' submissions. I would prefer having a more developed record on the matter before deciding this issue. The Grievance Response Form provided by Plaintiff appears to be incomplete. Although Plaintiff does not use the phrase "Catch-22," Plaintiff suggests that the

grievance procedures are "contradictory and poorly-worded." (D.I. 4 ¶ 12). Plaintiff argues, I think, that Plaintiff did all he could, because the submission of the grievance was automatically transmitted to supervisors, presumably including the Unit Commander. The best reading I have of what the prison administration did is that they either deemed the grievance not to be a grievance or deemed that it was a grievance but was sent to the wrong person. From what I understand so far, I think issues of procedural default and futility are ones that need factual development. *See Ross v. Blake,* 136 S. Ct. 1850, 1859 (2016) (explaining that exceptions to the "duty to exhaust" rule include when an administrative procedure (despite what regulations or guidance materials may promise) operates as a simple dead-end, or the system is "so opaque that it becomes, practically speaking, incapable of use").

As the Third Circuit recently noted, "some form of notice to the parties and an opportunity to respond are needed before a district court elects to resolve factual disputes regarding exhaustion." *Paladino v. Newsome*, 885 F.3d 203, 209-10 (3d Cir. 2018). After discovery, the parties will be asked to submit a status report advising whether I should resolve exhaustion through a summary judgment motion or an evidentiary hearing.

Therefore, Defendants' motion to dismiss (D.I. 3) is **DENIED**. Defendants' motion to conduct an evidentiary analysis on the issue of exhaustion (D.I. 3) is **GRANTED**. The parties are given seventy-five days to complete discovery limited to the exhaustion issue. The status report on how to proceed after the completion of discovery is due in eighty days.

IT IS SO ORDERED this 22nd day of July 2020.

__/s/ Richard G. Andrews_____
United States District Judge