## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CARY GREEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-85-SRF |
| | ) | |
| PHILLIP POORMAN, LT. GREGORY | ) | |
| ESPOSITO, and SHUKRIYA JENKINS, | ) | |
| | ) | |
| Defendants. | ) | |

## MEMORANDUM OPINION

In this action filed pursuant to 42 U.S.C. § 1983, plaintiff Cary Green ("Plaintiff") seeks

relief for alleged civil rights violations committed by Officer Phillip Poorman[1] ("Poorman") and

Lt. Gregory Esposito ("Esposito;" collectively, "Defendants").[2] Pending before the court is

Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.[3]

(D.I. 50) For the following reasons, Defendants' motion for summary judgment is GRANTED

with respect to Esposito and DENIED with respect to Poorman.[4]

---

[1] The complaint refers to Poorman as "Sgt." (D.I. 1, Ex. A at ¶ 11) The parties' joint stipulated facts refer to Poorman as "Officer." (D.I. 52 at ¶ 6)

[2] Plaintiff also brought causes of action against defendant Shukriya Jenkins in this matter. (D.I. 1-1 at 15-16) Ms. Jenkins did not respond to the complaint, and the Clerk of Court entered a default in appearance as to Ms. Jenkins pursuant to Federal Rule of Civil Procedure 55(a) on February 22, 2021. (D.I. 27) Plaintiff has asked the court to allow the case to go to trial to determine the amount of damages before formally seeking entry of default judgment under Rule 55(b)(2), because "the damages are the same for all defendants." (D.I. 25 at 2) The pending motion for summary judgment was brought only by defendants Poorman and Esposito. (D.I. 50)

[3] The briefing and other filings related to the pending motion for summary judgment are found at D.I. 51, D.I. 52, D.I. 53, D.I. 54, D.I. 55, and D.I. 57.

[4] The parties consented to jurisdiction by a U.S. Magistrate Judge on February 8, 2022. (D.I. 60)

## I.    BACKGROUND

On October 8, 2017, Plaintiff and his cell mate, Gerald Nash ("Nash"), attempted an escape from the roof of a prison building using bed sheets tied to a drainpipe. (D.I. 52 at ¶¶ 1-2) Plaintiff claims that Nash coerced him into participating in the escape attempt and ordered Plaintiff to climb down the sheets to the ground. (*Id.*) However, the makeshift rope could not support Plaintiff's weight and he fell to the ground, losing consciousness. (*Id.* at ¶¶ 2-3) When Plaintiff awoke and realized the extent of his injuries, he tried to get the attention of the security staff by shaking and climbing on the outer fence. (*Id.* at ¶ 3) A vehicle approached, and an officer ordered him to lie face down on the ground. (*Id.* at ¶ 4) The officer then cuffed his hands behind his back. (*Id.* at ¶ 5) Plaintiff informed an officer that Nash was on the roof with him. (*Id.*)

Esposito, Poorman, and other security staff arrived at the scene. (*Id.* at ¶ 6) Plaintiff alleges that Poorman pulled Plaintiff to his feet, repeatedly pushed him face first into the fence, punched him after placing him in the patrol car, ordered another officer to pepper spray him, and threatened him with further violence. (*Id.* at ¶ 7) Plaintiff claims that Esposito witnessed Poorman's actions. (*Id.* at ¶ 9) Poorman denies using any unjustified force against Plaintiff, and Esposito denies seeing Poorman mistreat Plaintiff. (*Id.* at ¶¶ 8, 10) Plaintiff was subsequently taken to the hospital to be treated for multiple breaks and fractures in his back, hip, and wrist. (*Id.* at ¶ 11)

On November 1, 2017, Plaintiff filed Grievance No. 385833, which accused Poorman of repeatedly smashing Plaintiff's face into a fence, pulling Plaintiff by the handcuffs attached to Plaintiff's broken wrist, punching Plaintiff repeatedly while Plaintiff was handcuffed in the back of a patrol car, and spraying pepper spray in Plaintiff's face while he was restrained in the back

of the patrol car.  (D.I. 16, Ex. A at DEF000017)  Plaintiff's grievance was subsequently

returned as unprocessed.  (*Id.* at DEF000018-19)

Plaintiff initiated a civil proceeding in Delaware Superior court on October 4, 2019,

asserting causes of action against Defendants for violations of his constitutional rights in addition

to state law tort claims.  (D.I. 1-1)  The action was removed to this court on January 21, 2020.

(D.I. 1)  Defendants promptly moved to dismiss the action based on Plaintiff's alleged failure to

exhaust his administrative remedies before filing suit.  (D.I. 3)  On July 22, 2020, the court

issued a Memorandum Order denying the motion to dismiss, but granting Defendants' request to

conduct an evidentiary analysis on the issue of exhaustion.  (D.I. 7)  The parties followed up with

a joint status report on November 23, 2020, in which Defendants agreed not to pursue dismissal

of Poorman on exhaustion grounds.  (D.I. 16)  Defendants maintained their position regarding

Plaintiff's failure to exhaust his administrative remedies regarding Esposito.  (*Id.*)

The parties recently consented to the jurisdiction of the Magistrate Judge and agreed to

waive their right to a jury trial.  (D.I. 59; D.I. 60)  Accordingly, the undersigned judicial officer

converted the two-day jury trial to a bench trial, which is scheduled to proceed on March 3 and 4,

2022.  (D.I. 63 at ¶ 6)

## II.  LEGAL STANDARD

"The court shall grant summary judgment if the movant shows that there is no genuine

dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed.

R. Civ. P. 56(a).  Material facts are those that could affect the outcome of the proceeding, and "a

dispute about a material fact is 'genuine' if the evidence is sufficient to permit a reasonable jury

to return a verdict for the nonmoving party."  *Lamont v. New Jersey*, 637 F.3d 177, 181 (3d Cir.

2011) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v.*

3

*Catrett*, 477 U.S. 317, 322-23 (1986)).

The moving party bears the initial burden of proving the absence of a genuinely disputed material fact. *See Celotex*, 477 U.S. at 321. The burden then shifts to the non-movant to demonstrate the existence of a genuine issue for trial, and the court must view the evidence in the light most favorable to the non-moving party. *See Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986); *Williams v. Borough of West Chester, Pa.*, 891 F.2d 458, 460-61 (3d Cir. 1989); *Scott v. Harris*, 550 U.S. 372, 380 (2007). An assertion that a fact cannot be—or, alternatively, is—genuinely disputed must be supported either by citing to "particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials," or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1)(A) & (B). To defeat a motion for summary judgment, the nonmoving party must "do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita*, 475 U.S. at 586. The "mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment;" rather, there must be enough evidence to enable a jury to reasonably find for the non-moving party on the issue. *See Anderson*, 477 U.S. at 247-49. "If the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." *Id.* at 249-50 (internal citations omitted); *see also Celotex*, 477 U.S. at 322. If the non-movant fails to make a sufficient showing on an essential element of its case on which it bears the burden of proof, then the movant is entitled to judgment as a matter of law. *See Celotex*, 477 U.S. at 322.

4

## III. DISCUSSION

### A. Qualified Immunity

Defendants contend that summary judgment should be granted because they are entitled to qualified immunity. (D.I. 51 at 3-9) Qualified immunity insulates government officials from civil liability when performing discretionary functions "insofar as their conduct does not violate 'clearly established' statutory or constitutional rights of which a reasonable person would have known." *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982); *see also Lamont v. New Jersey*, 637 F.3d 177, 182 (3d Cir. 2011). In assessing qualified immunity, a court must consider "(1) whether the officer violated a constitutional right, and (2) whether the right was clearly established, such that it would [have been] clear to a reasonable officer that his conduct was unlawful." *Id.* at 182 (citation and internal quotation omitted). A court may address the elements in either order. *See Pearson v. Callahan*, 555 U.S. 223, 236 (2009).

The Third Circuit has announced two supervisory rules for district courts at the summary judgment stage of qualified immunity cases. *Williams v. City of York, Pa.*, 967 F.3d 252, 254-55 (3d Cir. 2020). Under *Forbes v. Township of Lower Merion*, 313 F.3d 144 (3d Cir. 2002), district courts are required "to specify those material facts that are and are not subject to genuine dispute and explain their materiality." *Id.* at 146. And under *Grant v. City of Pittsburgh*, 98 F.3d 116, 126 (3d Cir. 1996), district courts must "analyze separately, and state findings with respect to, the specific conduct of each [defendant]." *Id.* at 126. Proceeding under this framework, and upon consideration of the evidence specific to each of the moving Defendants, Defendants' motion for summary judgment is denied in part and granted in part.

### 1.  Violation of a constitutional right by Poorman

Defendants argue that Plaintiff cannot satisfy the first inquiry in the qualified immunity analysis because he has not shown enough facts to make out a claim for excessive force under the Eighth Amendment.  (D.I. 51 at 4)  The Eighth Amendment protects convicted prisoners from cruel and unusual punishment, and the Supreme Court has interpreted this prohibition to bar prison officials from using excessive force against inmates.  U.S. Const. amend. VIII; *Whitley v. Albers*, 475 U.S. 312, 318-19 (1986); *Hudson v. McMillian*, 503 U.S. 1, 6-7 (1992). The test for an Eighth Amendment claim of excessive force is "whether [the] force was applied in a good faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (quoting *Whitley*, 475 U.S. at 319).[5]  The relevant factors to consider are: "(1) the need for the application of force; (2) the relationship between the need and the amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Id.*; *see also Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000).  Summary judgment is not appropriate where "it appears that the evidence, viewed in the light most favorable to the plaintiff, will support a reliable inference of wantonness in the infliction of pain." *Brooks*, 204 F.3d at 106.

---

[5] Defendants' argument that the court must conduct a two-step analysis that includes subjective and objective components is misplaced. *See Hudson*, 503 U.S. at 9 ("When prison officials maliciously and sadistically use force to cause harm, contemporary standards of decency always are violated. This is true whether or not significant injury is evident. Otherwise, the Eighth Amendment would permit any physical punishment, no matter how diabolic or inhuman, inflicting less than some arbitrary quantity of injury.").

### a.    Need for application of force

Beginning with the first factor, the need for force, it is established law that an officer

"may not . . . use gratuitous force against an inmate who has been subdued." *Giles*, 571 F.3d at

326.  In *Giles*, the Third Circuit reversed and remanded the district court's order granting

summary judgment because a dispute of material fact existed as to whether the plaintiff had

ceased resisting when he was kicked or kneed in the side. *Id.* at 327.  The plaintiff was not yet in

handcuffs, but testified that he was on the ground, subdued, and nonresistant during the use of

force. *Id.*

Here, the parties do not dispute that when Poorman arrived on the scene, Plaintiff was

already lying face down with his hands cuffed behind his back.  (D.I. 52 at ¶¶ 4-6; D.I. 53 at

JA183-84, 262-63)  It is also undisputed that Plaintiff had complied with the orders of two other

officers before Poorman arrived.  (*Id.*)  Testimony from Esposito confirms that Plaintiff was

injured and in pain when he and Poorman arrived, and Plaintiff "appeared frantic and was crying

while stating that his back and arm were injured."  (D.I. 53 at JA185)  Poorman's testimony

suggests that any resistance by Plaintiff upon his arrival was minimal: "It was a little bit of a

struggle to get him to walk forward.  We approached the patrol vehicle.  There was a guardrail

between us. . . .  Trying to get him over it, we both tripped, causing us to fall into the side of the

car and then into the back of the car."  (*Id.* at JA266)  As in *Giles*, Plaintiff was allegedly in

handcuffs for the duration of his interaction with Poorman.  *See Giles*, 571 F.3d at 321 ("Because

Giles testified that he was kicked and punched while fully restrained on the ground, after he

ceased to resist, Giles alleges conduct in violation of his Eighth Amendment rights that a

reasonable officer would have known was a violation under the circumstances[.]").

Defendants contend that the use of force by Poorman was necessary because Plaintiff was attempting to escape from prison, and the use of non-lethal force is justified in such circumstances. (D.I. 51 at 6-7; D.I. 55 at 4-5)  In support of their position, Defendants cite to the Supreme Court's decision in *Bell v. Wolfish*, 441 U.S. 520, 547 (1979), which emphasized the importance of maintaining institutional security and preserving internal order and discipline in stating that "[p]rison officials must be free to take appropriate action to ensure the safety of inmates and corrections personnel and to prevent escape or unauthorized entry."  The court notes that *Bell v. Wolfish* was not an Eighth Amendment case. *See id.* at 579 (Stevens, J., dissenting). Moreover, the asserted policy goal of "prevent[ing] escape or unauthorized entry" was not served here because Plaintiff had already been captured and restrained before Poorman's arrival, and any escape attempt on Plaintiff's part was successfully thwarted.  Viewing the facts in the light most favorable to Plaintiff as the non-moving party, the court finds that a genuine dispute of material fact exists regarding the need for the use of force.

      **b.**    **Relationship between the need and amount of force used**

The second factor requires the court to consider the relationship between the need and the amount of force that was used. *See Giles*, 571 F.3d at 326.  Defendants argue that Poorman's use of force "prevent[ed] Mr. Green's escape" and that even "lethal force may have been constitutionally permissible under the circumstances." (D.I. 51 at 6)  A reasonable factfinder, however, could find that the force allegedly used by Poorman was not related to preventing Plaintiff's escape.  As noted at § III.A.1.a, *supra*, it is undisputed that Plaintiff was subdued and apprehended before Poorman arrived.  He was in pain from his earlier fall.  And he was on the inside of the outer fence, on the ground, and in handcuffs. (D.I. 53 at JA183-85)  Both the

8

amount of force used and the need for force are disputed material facts that cannot appropriately be resolved on a motion for summary judgment.

### c.   Extent of injury

The third factor requires the court to consider the extent of the injury inflicted in the use of force. *See Giles*, 571 F.3d at 326. However, the analysis generally "must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." *Smith v. Mensinger*, 293 F.3d 641, 647–48 (3d Cir. 2002) (noting that plaintiff could prevail on his Eighth Amendment claim "despite the *de minimis* nature of his injuries"); *see also Hudson*, 503 U.S. at 7 ("The absence of serious injury is . . . relevant to the Eighth Amendment inquiry, but does not end it."). For example, in *Brooks*, the Third Circuit reversed the district court's grant of summary judgment even while noting that it was "apparent that the type of vicious, prolonged attack alleged by [plaintiff] would have resulted in far greater injuries than those which he indisputably sustained" because "a jury could find that the defendants acted . . . out of malice for the very purpose of causing harm." *Brooks*, 204 F.3d at 105, 109.

Here, Plaintiff does not contend that Poorman was responsible for the fractures later diagnosed at the hospital. (D.I. 52 at ¶ 12) However, Plaintiff does contend that Poorman punched him repeatedly in the neck, torso, and back while he was handcuffed and compliant. (*Id.* at ¶ 7) He plausibly alleges that Poorman's assault made the pain from his injuries "drastically worse." (D.I. 53 at JA096-97) For example, Plaintiff testified that Poorman picked Plaintiff up off the ground by the chain of his handcuffs after Plaintiff sustained a broken wrist. (D.I. 52 at ¶¶ 11-12; D.I. 53 at JA028, JA096) Poorman's own testimony confirms that he pushed down on Plaintiff in the back seat of the patrol car. (D.I. 53 at JA268) Viewing these facts in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Poorman

9

used force beyond what was necessary to return Plaintiff to prison.  Consequently, a material

dispute exists as to "the extent of the force and the circumstances in which it [was] applied[.]"

*Smith*, 293 F.3d at 648.

> ### d.    Extent of threat to safety

The fourth factor requires the court to consider the extent of the threat to the safety of

staff and inmates, as reasonably perceived by the responsible officials on the basis of the facts

known to them. *See Giles*, 571 F.3d at 326.  In *Santiago v. Fields*, 170 F. Supp. 2d 453 (D. Del.

2001), the defendants maintained that they "used force necessary only to subdue plaintiff and

protect their safety when he became combative." *Id.* at 458.  However, the court noted that

"plaintiff claim[ed] he was handcuffed behind his back at the time, reducing the threat of harm to

defendants," and held that a genuine issue of material fact existed as to the extent of the threat.

*Id.*

Similarly, it is undisputed in this case that Plaintiff was either sitting or lying on the

ground and handcuffed behind his back, with at least three officers at the scene, when Poorman

arrived.  Esposito testified that there were "[u]pwards of 20" Department of Corrections

personnel present at some time during the incident.  (D.I. 53 at JA180)  Under these

circumstances, a reasonable factfinder could determine that Plaintiff was no longer a security

threat during the interaction with Poorman and the escape attempt had ended.

> ### e.    Efforts to temper the severity of the force

Under the fifth factor, the court considers any efforts made to temper the severity of a

forceful response. *See Giles*, 571 F.3d at 326.  Plaintiff claims that Poorman only stopped

"smashing" his face into the fence because another male officer said, "Come on, Phil.  Stop," and

an officer put a hand on Poorman's shoulder.  (D.I. 53 at JA068, JA139-40)  After the incident at

the fence, Plaintiff contends that Poorman went on to assault him inside the patrol car. In contrast, the first officer to interact with Plaintiff prior to Poorman's arrival initially drew his service weapon, but he holstered the weapon without the use of force once Plaintiff complied with his directives. (*Id.* at JA307) A reasonable factfinder could compare and contrast the evidence of these two encounters and conclude that Poorman made no attempt to temper the severity of his forceful response. In sum, genuine issues of material fact about Poorman's conduct are in dispute and must be reserved for trial.

### 2. Whether the constitutional right was clearly established

In the alternative, Defendants argue that Plaintiff cannot satisfy the second inquiry because the allegedly violated constitutional right was not clearly established, and Poorman was justified in his belief that non-lethal force was necessary to prevent Plaintiff's escape. (D.I. 51 at 8-9) "Clearly established means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful." *Dist. of Columbia v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotation marks omitted). The court must focus on "whether the violative nature of *particular* conduct is clearly established." *Jacobs v. Cumberland County*, 8 F.4th 187, 196 (3d Cir. 2021) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). Therefore, the central question is whether the existing law gave the officer "fair warning" that his particular conduct was unlawful. *Id.* (quoting *Schneyder v. Smith*, 653 F.3d 313, 329 (3d Cir. 2011)).

In excessive use-of-force cases, "officers are entitled to qualified immunity unless existing precedent 'squarely governs' the specific facts at issue." *Id.* (quoting *Kisela v. Hughes*, 138 S. Ct. 1148, 1153 (2018)). While "[t]he caselaw does not have to be 'directly on point,' [the] existing precedent must have placed the question of unlawfulness 'beyond debate.'" *Id.*

(quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011)).  Similar cases with analogous facts can help "move a case beyond the otherwise 'hazy border between excessive and acceptable force' and thereby provide an officer notice that a specific use of force is unlawful." *Id.* (quoting *Kisela*, 138 S. Ct. at 1153).

Construing the evidence in the light most favorable to Plaintiff, the unlawfulness of the alleged conduct here is "beyond debate" and far from the "hazy border" described above.[6]  The parties do not dispute that Plaintiff participated in an escape attempt.  (D.I. 52 at ¶¶ 1-2)  But it is also undisputed that, by the time Poorman arrived, Plaintiff had already been handcuffed by another officer and was on the ground inside the outer fence of the prison.  (*Id.* at ¶¶ 5-6)  The clearly established right at issue is not the use of excessive force during an escape attempt, but rather the use of excessive force once an inmate has been restrained.

Striking a physically restrained and nonthreatening inmate is clearly unlawful under the precedent of the Third Circuit and sister circuits.  *See, e.g.*, *Giles*, 571 F.3d at 326 ("[A]t the time of the incident in 2001, it was established that an officer may not kick or otherwise use gratuitous force against an inmate who has been subdued."); *Cowart v. Erwin*, 837 F.3d 444, 454 (5th Cir. 2016) ("We have little difficulty concluding that in 2009, the time of the incident, it was well-established, in sufficiently similar situations, that officers may not 'use gratuitous force against a prisoner who has already been subdued[.]'").  Moreover, "[i]t is generally recognized that 'it is a violation of the Eighth Amendment for prison officials to use mace, tear gas or other chemical agents in quantities greater than necessary or for the sole purpose of infliction of pain.'"

---

[6] In reaching this conclusion, the court does not mean to suggest that the factfinder must ultimately side with Plaintiff.  This analysis is confined to the application of the summary judgment standard under Rule 56, which requires the court to view the evidence in the light most favorable to the non-moving party.

*Williams v. Benjamin*, 77 F.3d 756, 763 (4th Cir. 1996) (quoting *Soto v. Dickey*, 744 F.2d 1260,

1270 (7th Cir. 1984)); *see also Robinson v. Danberg*, 673 F. App'x 205, 212 (3d Cir. 2016)

(finding sufficient evidence for a reasonable factfinder to conclude that officer's use of mace on

an inmate in his cell amounted to an excessive use of force).  Viewing the evidence under the

required deferential standard in favor of Plaintiff, a reasonable factfinder could find that Plaintiff

was subdued and unresisting when Poorman allegedly beat him and caused him to be sprayed

with pepper spray, and any reasonable officer would have known that this conduct is unlawful.

The reasonableness of Poorman's actions will require an assessment of witness credibility at

trial, and it would be premature to resolve the matter on summary judgment.  Therefore,

Poorman is not entitled to qualified immunity, and his motion for summary judgment on

Plaintiff's constitutional claim is denied.

### 3. Supervisory liability of Esposito

Individual liability predicated on a defendant's supervisory role requires a showing that

the supervisor-defendant had personal involvement in the alleged constitutional violation, and

"liability cannot be predicated solely on the operation of respondeat superior[.]"  *Thomas v. Bd.*

*of Educ. of Brandywine Sch. Dist.*, 759 F. Supp. 2d 477, 495 (D. Del. 2010) (quoting *Rode v.*

*Dellarciprete*, 845 F.2d 1195, 1207 (3d Cir. 1998)).  Here, Defendants argue that the evidence

does not support Plaintiff's claim for supervisory liability against Esposito, and allegations that

Esposito witnessed Poorman pushing Plaintiff's face into the fence are insufficient to show that

Esposito participated in a violation of Plaintiff's constitutional rights.  (D.I. 51 at 7-8)

For the reasons set forth at § III.C, *infra*, Plaintiff did not exhaust his administrative

remedies as to Esposito.  Consequently, the court does not reach the substance of Defendants'

summary judgment position regarding Esposito's supervisory liability.

### B. Delaware Tort Claims Act

Defendants further argue that Poorman is entitled to statutory immunity on Plaintiff's state law claims of assault, battery, and infliction of emotional distress under the Delaware Tort Claims Act ("DTCA"), 10 *Del. C.* § 4001 *et seq.* The DTCA provides immunity for state officials acting in their individual capacity if "(1) [t]he act or omission complained of arose out of and in connection with the performance of an official duty requiring a determination of policy, the interpretation or enforcement of statutes, rules or regulations . . . or any other official duty involving the exercise of discretion . . . ; (2) [t]he act or omission complained of was done in good faith and in the belief that the public interest would be best served thereby; and (3) [t]he act or omission complained of was done without gross or wanton negligence." *Id.* Under the DTCA, the plaintiff has the burden of proving the absence of one or more of the elements. *Id.* at § 4001.

A genuine issue of material fact exists regarding whether Poorman acted in good faith or without gross or wanton negligence. Like an excessive force claim, both the second and third elements of the statutory immunity defense require an inquiry into the subjective intent of the officer. *See Wiers v. Barnes*, 925 F. Supp. 1079, 1092 (D. Del. 1996) (denying both qualified immunity and DTCA immunity where the officer's subjective intent presented a genuine issue of material fact). These elements "do not readily lend themselves to resolution by summary judgment." *Id.*; *see also Barrett v. McDonald*, C.A. No. 14-742-LPS, 2015 WL 5679732, at *18 (D. Del. Sept. 25, 2015) (citing *Eustice v. Rupert*, 460 A.2d 507, 509 (Del. 1983)) ("Generally, the issue of whether facts and circumstances amount to willful conduct or gross negligence is a question for the finder of fact.").

14

The facts alleged against Poorman could support a finding of bad faith or gross negligence because they plausibly suggest that Poorman used force on Plaintiff multiple times when Plaintiff was visibly injured, restrained in handcuffs, and surrounded by multiple officers. (D.I. 52 at ¶¶ 4-6, 11-12; D.I. 53 at JA028, 096, 183-85, 262-63)  Construing this record in the light most favorable to Plaintiff, a reasonable factfinder could conclude that Poorman acted with gross or wanton negligence or bad faith because Poorman's alleged conduct, as described in more detail at § III.A.1, *supra*, "represent[s] an extreme departure from the ordinary standard of care." *Browne v. Robb*, 583 A.2d 949, 953 (Del. 1990).  Therefore, Defendants' motion for summary judgment as to the state law claims against Poorman is denied.

### C.  Exhaustion of Administrative Remedies

Plaintiff's excessive force claim against Esposito is procedurally defective because Plaintiff failed to first exhaust his administrative remedies as required under the Prison Litigation Reform Act ("PLRA"), 42 U.S.C. § 1997e.  The PLRA requires that prisoners exhaust available administrative remedies before bringing a § 1983 claim.  42 U.S.C. § 1997e(a).  "Requiring exhaustion allows prison officials an opportunity to resolve disputes concerning the exercise of their responsibilities before being haled into court." *Jones v. Bock*, 549 U.S. 199, 204 (2007).  The applicable procedural rules that a prisoner must exhaust "are defined not by the PLRA, but by the prison grievance process itself." *Id.* at 200.

There is no dispute that Plaintiff did not name Esposito in his grievance against Poorman. (D.I. 16 at 1; Ex. A)  The Supreme Court has held that "exhaustion is not *per se* inadequate simply because an individual later sued was not named in the grievances." *Jones*, 549 U.S. at 219.  Instead, the Supreme Court determined that the lower courts should determine the sufficiency of exhaustion when a defendant is not named in a grievance. *Id.*  When a grievance

15

procedure solicits information regarding the identity of individuals involved in the incident, the Third Circuit has indicated that the grievant should provide identifying information, and a failure to do so may result in dismissal for failure to exhaust administrative remedies. *See Spruill v. Gillis*, 372 F.3d 218, 234 (3d Cir. 2004); *see also Miller v. Taylor*, No. 08-CV-271, 2011 WL 1045564, at *5 (D. Del. Mar. 15, 2011) (explaining that the exhaustion requirement was not satisfied as to a supervisory liability claim where "the grievance [did] not make any mention of any problem with the conduct of the supervising lieutenant . . . either by name or by position").

Here, the grievance form completed by Plaintiff in November 2017 instructed him to "[b]riefly state the reason for this grievance. Give dates and names of others involved in the incident or any witnesses." (D.I. 16, Ex. A at DEF000017) Plaintiff identified Poorman by name on the grievance form, but he did not identify Esposito. (*Id.*) The undisputed facts, including Plaintiff's own testimony, establish that Plaintiff knew Esposito and was able to identify him during the incident when Poorman allegedly slammed him against the fence. (D.I. 52 at ¶ 9; D.I. 53 at JA107:15-23, 151:1-7) Nonetheless, Plaintiff's only explanation for Esposito's omission is that Esposito was not "the main person involved." (D.I. 53 at JA107:24-109:1) The undisputed facts and evidence confirm that Plaintiff could have included Esposito in the grievance, and his decision to omit Esposito amounts to a failure to exhaust the available administrative remedies for his claim against Esposito.

Plaintiff argues that he was not required to file a grievance against Esposito because "DOC has no grievance procedure for complaints about security staff[.]"[7] (D.I. 57 at ¶ 2) This

---

[7] Plaintiff's argument rests on his experience in submitting a grievance against Poorman that was returned unprocessed. The record confirms that Plaintiff's grievance against Poorman was returned to him as unprocessed because it was a request for the investigation into the actions of staff members, and "[r]equests are not processed through the grievance procedure. Please correspond with the appropriate officer to secure the information requested." (D.I. 16, Ex. A at

is not supported by the language of Delaware Department of Correction Policy Number 4.4 (the "Inmate Grievance Policy"), which broadly defines a "grievance" as "[a] written complaint concerning . . . any act or omission attributable to staff, vendors, volunteers, or other inmates affecting an inmate and any condition or incident within the institution that affects the grievant." (D.I. 16, Ex. B at DEF000002)  Paragraph 3a of the Inmate Grievance Policy provides a separate procedure for requests to investigate the actions of security staff.  (*Id.* at DEF000003)  This procedure is described within the Inmate Grievance Policy, and it is not included in the paragraph addressing "[p]olicies that have their own formal appeal mechanisms [and] are not grievable under this policy."  (*Id.*)  Thus, the evidence of record indicates that both grievances and written requests for staff investigations are governed by the Inmate Grievance Policy.

There is no dispute as to the existence of the Inmate Grievance Policy,[8] nor is there a dispute that Plaintiff did not file a grievance or a written request regarding Esposito's conduct, as required by the Inmate Grievance Policy.  Plaintiff's complaints about the implementation and effectiveness of the Inmate Grievance Policy do not excuse his failure submit a grievance or written request regarding Esposito's conduct in the first instance.[9]  Consequently, Defendants'

---

DEF000018)  The procedure identified in the return of Plaintiff's grievance corresponds with the procedure for submitting written requests at ¶ 3a of the Inmate Grievance Policy.  (*Id.*, Ex. B at DEF000003)  Plaintiff's returned grievance indicated that a copy of his grievance would be sent on his behalf to his Unit Commander and the area supervisor in accordance with that procedure. (*Id.*, Ex. A at DEF000019)  Regardless of the semantics, the Inmate Grievance Policy governs submission of both grievances and written requests for staff investigations, and there is no dispute that Plaintiff submitted neither a grievance nor a written request with respect to Esposito.
[8] Plaintiff challenges the applicability of the Inmate Grievance Policy to his circumstances, not the existence of the Inmate Grievance Policy itself.  (D.I. 57 at ¶ 3)  But Plaintiff does not provide sufficient evidence to suggest that no grievance policy governs his complaint about Esposito's conduct.
[9] In a July 22, 2020 Memorandum Order on Defendants' motion to dismiss, the court concluded that "issues of procedural default and futility are ones that need factual development," and directed the parties to conduct discovery on the issue of exhaustion on that basis.  (D.I. 7 at 7)  Yet Plaintiff cites no new evidence in the sur-reply brief.  (D.I. 57)  Instead, Plaintiff refers back

motion for summary judgment is granted with respect to Esposito.[10]  *See Green v. Poorman*,

C.A. No. 20-85-RGA, 2020 WL 4201854, at *2 (D. Del. July 22, 2020) (concluding that the

issue of exhaustion is for the court to decide, and "a plaintiff's failure to exhaust all

administrative remedies is an insuperable barrier to recovery.").

## IV.     CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED-IN-

PART.  (D.I. 50)  Specifically, the motion is GRANTED with respect to Esposito and DENIED

with respect to Poorman.  An Order consistent with this Memorandum Opinion shall issue.

Dated: February 17, 2022

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

---

to his opposition to Defendants' motion to dismiss, which addressed exhaustion more broadly
against both Defendants.  (*Id.*)  Indeed, Plaintiff's responsive brief to the motion to dismiss
focuses primarily on the sufficiency of the grievance Plaintiff submitted against Poorman.  (D.I.
4)  Defendants have since dropped their exhaustion arguments with respect to Poorman.  (D.I.
16)
[10] Plaintiff's failure to submit a grievance regarding Esposito's involvement cannot be cured at
this stage.  First, the Inmate Grievance Policy specifies that "[i]nmates are prohibited from
submitting more than one grievance arising from the same incident."  (D.I. 16, Ex. B at ¶ 11)
The record establishes that Plaintiff already submitted a grievance regarding this incident, and
the grievance included no mention of Esposito.  (*Id.*, Ex. A)  Second, any grievance against
Esposito is now time-barred because grievances must be submitted "within 7 calendar days of
the incident."  (D.I. 16, Ex. B at DEF000005)