IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| CARY GREEN | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. 20-85-SRF |
| | ) | |
| PHILLIP POORMAN, LT. GREGORY | ) | |
| ESPOSITO, and SHUKRIYA JENKINS, | ) | |
| | ) | |
| Defendants. | ) | |

**OPINION FOLLOWING BENCH TRIAL[1]**

## I.  INTRODUCTION

Plaintiff Cary Green ("Plaintiff"), an inmate at the Howard R. Young Correctional Center

in Wilmington, Delaware, filed this lawsuit in Delaware Superior Court on October 4, 2019.

(D.I. 1-1)  On January 21, 2020, Correctional Officer Phillip Poorman ("Poorman") and Lt.

Gregory Esposito ("Esposito") removed the case to this court because the complaint seeks

redress for alleged violations of Plaintiff's civil and constitutional rights.  (D.I. 1 at ¶ 6)  The

complaint alleges violations of Plaintiff's civil rights pursuant to 42 U.S.C. § 1983 by Poorman,

Esposito, and Shukriya Jenkins ("Jenkins;" collectively, "Defendants") relating to events that

occurred on October 8, 2017.  (*Id.*)  On that date, Plaintiff fell from the roof of the prison in an

unsuccessful escape attempt, sustaining injuries to his back, wrist, and hip.

Among other things, Plaintiff alleges Poorman exacerbated the pain from those injuries

by using excessive force against Plaintiff on five occasions as Plaintiff was returned to the prison

and brought offsite to receive medical care: (1) Poorman allegedly lifted Plaintiff off the ground

---

[1] On February 8, 2022, the parties consented to the jurisdiction of the Magistrate Judge to
conduct all proceedings in this case, including trial, the entry of final judgment, and all post-trial
proceedings.  (D.I. 60)

by the chain of Plaintiff's handcuffs (the "Handcuff Incident"); (2) Poorman allegedly shoved Plaintiff's face into the prison fence (the "Fence Incident"); (3) Poorman allegedly jumped on top of Plaintiff and repeatedly punched him in the back seat of the patrol car (the "Patrol Car Incident"); (4) Poorman allegedly ordered another officer to spray Plaintiff's face with pepper spray (the "Pepper Spray Incident"); and (5) Poorman allegedly made verbal threats against Plaintiff as Plaintiff was transported to the hospital with a stun cuff on his ankle (the "Stun Cuff Incident"). (D.I. 1-1)  Plaintiff also alleges state tort law claims for assault, battery, and intentional infliction of emotional distress based upon these incidents. (*Id.*)

The Clerk of Court entered a default in appearance as to Jenkins pursuant to Federal Rule of Civil Procedure 55(a) on February 22, 2021, and a default judgment was entered against Jenkins under Rule 55(b) on April 16, 2021.[2]  (D.I. 27; D.I. 34)  The court granted summary judgment in favor of Esposito in its Memorandum Opinion and Order dated February 17, 2022. (D.I. 65; D.I. 66)

Plaintiff's constitutional excessive force and state law tort claims against Poorman proceeded to a one-day bench trial on March 3, 2022.  The parties subsequently submitted post-trial briefs. (D.I. 73; D.I. 74; D.I. 75; D.I. 76)

Having considered the trial record, the post-trial briefing, and the applicable law, the court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a).

---

[2] The court held an inquisition hearing on March 11, 2022 on Plaintiff's motion for default judgment against Jenkins, which is addressed in a separate opinion.

## II.    FINDINGS OF FACT

This section contains the court's findings of fact on disputes raised by the parties during trial, as well as facts to which the parties stipulated. Additional findings of fact are also discussed in connection with the court's conclusions of law later in this Opinion.

1.    Plaintiff was an inmate at the Howard R. Young Correctional Institute in Wilmington, Delaware on October 8, 2017. (D.I. 67 at § III.A.1)

2.    Poorman was a correctional officer for the Delaware Department of Correction on October 8, 2017. (*Id.* at § III.A.2)

3.    On October 8, 2017, Plaintiff and his cell mate, Gerald Nash ("Nash"), attempted an escape from the roof of a prison building using bed sheets tied to a drainpipe. (*Id.* at § III.A.3-4) Plaintiff claims that Nash coerced him into participating in the escape attempt. (*Id.*)

4.    The bedsheets did not support Plaintiff's weight and he fell to the ground, losing consciousness. (*Id.* at § III.A.4-5)

5.    Plaintiff was subsequently diagnosed with multiple breaks and fractures in his back / spine, an acetabular (hip) fracture, and a broken wrist at both his ulna and radius as a result of the fall. (*Id.* at § III.A.9-10) Plaintiff's arm was visibly injured. (3/3/2022 Tr. at 7:21-8:19, 72:20-25)

6.    When Plaintiff awoke and realized the extent of his injuries, he tried to get the attention of the security staff by shaking and climbing on the outer fence. (D.I. 67 at § III.A.5)

7.    A vehicle approached. Corporal Pontano exited the vehicle, announced he had his service weapon out, and ordered Plaintiff to lie face down on the ground. (*Id.* at § III.A.6, 8; 3/3/2022 Tr. at 4:24-6:3, 70:10-14)

8.    Plaintiff complied with Corporal Pontano's order. (3/3/2022 Tr. at 6:1-5)

3

9.      Officer Curry and K-9 Officer Griffith arrived with a service dog while Plaintiff was lying on the ground. (*Id.* at 6:14-7:3, 92:23-93:13)  Other officers also arrived on the scene at this time, including Officer Jose Lopez ("Lopez"). (*Id.* at 7:14-17, 92:21-93:7, 94:5-7)

10.     An officer cuffed Plaintiff's hands behind his back, but Plaintiff's legs were not restrained. (D.I. 67 at § III.A.7-8; 3/3/2022 Tr. at 6:4-7:24, 8:20-22)

11.     Plaintiff informed the officers that Nash was on the roof with him. (D.I. 67 at § III.A.7; 3/3/2022 Tr. at 9:4-12, 95:14-18)

12.     Plaintiff informed the officers that his back and wrist were hurting, and he requested medical assistance. (3/3/2022 Tr. at 9:13-16, 95:10-13)

13.     **Handcuff and Fence Incidents.**  Poorman, Esposito, and Officer Mooney were among the last officers to arrive at the scene while Plaintiff was lying face down on the ground wearing handcuffs. (D.I. 67 at § III.A.8; 3/3/2022 Tr. at 8:23-9:3, 34:11-35:14, 71:3-14)

14.     Upon his arrival at the scene, Poorman approached Plaintiff, lifted Plaintiff up by his bicep, and leaned him against the fence. (3/3/2022 Tr. at 34:17-35:20, 74:2-20, 94:8-95:9, 108:20-109:3)

15.     Plaintiff was crying and telling the officers that his back and arm were injured, and he was in pain. (*Id.* at 10:12-13, 77:10-19, 95:10-13)

16.     **Patrol Car Incident.**  Poorman and Esposito assisted Plaintiff over a guardrail, and Poorman brought Plaintiff to a patrol car. (*Id.* at 11:17-23, 71:23-72:17, 77:25-78:4, 96:9-24, 115:18-116:5)

17.     The patrol car was positioned between ten and thirty feet away from the guardrail. (*Id.* at 12:18-25, 80:7-17, 97:25-98:1)

4

     **18.**     Plaintiff had difficulty entering the patrol car and sitting up. (*Id.* at 13:3-25, 78:5-14, 80:21-24)  Plaintiff was shoved into the backseat of the patrol car. (*Id.* at 13:14-17, 20:18-20, 39:8-10)  Poorman landed on top of Plaintiff, who was lying across the back seat on his back, with his head by the passenger side rear door and his feet by the driver side rear door. (*Id.* at 13:3-14:4, 20:18-20, 39:9-40:5, 40:24-41:7, 99:4-9)  Plaintiff's wrists remained handcuffed behind his back. (*Id.* at 13:3-14:4, 39:9-10, 98:20-99:6)

     **19.**     The back seat of the patrol car was caged and confined. (*Id.* at 50:2-3)

     **20.**     As Poorman was on top of Plaintiff in the back seat, a "commotion" ensued. (*Id.* at 78:8-11, 98:7-14)

     **21.**     Esposito and Lopez heard the commotion, but they did not observe what was happening in the back of the patrol car. (*Id.* at 73:1-75:1, 78:5-14, 80:21-81:4, 98:5-25)

     **22.**     Poorman testified that Plaintiff was "flailing and kicking" in the back seat of the patrol car. (*Id.* at 60:19-20)  Poorman also testified that he pushed himself off of Plaintiff with his hands to get out of the vehicle. (*Id.* at 39:15-24)

     **23.**     The court gives no weight to Plaintiff's testimony that Poorman punched him in the neck and torso area because it is inconsistent. (*Id.* at 13:1-14:9)  First, Plaintiff testified he remembered Poorman "physically putting" him into the backseat "and then getting in the car on top of [him]." (*Id.* at 13:3-5)  Moments later, he testified he was shoved into the back seat and Poorman closed the door. (*Id.* at 13:15-17)  He then testified that Poorman opened the door, got on top of him, and began punching him. (*Id.* at 14:3-4)  No other evidence supports Plaintiff's testimony that Poorman entered the patrol vehicle a second time and assaulted Plaintiff after Plaintiff was placed in the back seat.

24.     Poorman exited the patrol car and closed the rear driver side door.  (*Id.* at 16:19-22, 40:2-11, 41:5-7)

25.     Lopez assisted Poorman in securing Plaintiff in the patrol vehicle by grabbing his shirt through the rear passenger side door and pulling him across the back seat from the opposite side of the vehicle.  (*Id.* at 99:16-23)

26.     **Pepper Spray Incident.**  After Lopez pulled Plaintiff across the back seat, he deployed pepper spray in Plaintiff's face.  (*Id.* at 16:19-22, 18:1-3, 40:2-99:19-23, 100:2-5, 101:1-5, 111:3-21, 113:21-114:4)

27.     Lopez was able to position Plaintiff in an upright seated position after deploying the pepper spray.  (*Id.* at 100:12-15)

28.     Corporal Pontano then drove the patrol car to booking and receiving.  Lopez sat in the front passenger seat, Esposito sat in the back passenger side seat, and Plaintiff sat in the back driver side seat.  (*Id.* at 74:23-75:15, 101:13-17)

29.     **Stun Cuff Incident.**  Later that evening, Plaintiff was taken to the infirmary on a gurney.  (D.I. 67 at § III.A.9; 3/3/2022 Tr. at 22:8-23)

30.     After Plaintiff left the infirmary and before he was placed in the ambulance, Poorman fitted Plaintiff's ankle with a stun cuff in accordance with the standard procedure for transferring an inmate outside of the correctional facility.  (3/3/2022 at 18:12-15, 19:4-6, 23:17-18, 42:9-18)

31.     Poorman recited a standard demonstration on the purpose and function of the stun cuff, consistent with the applicable policy.  (*Id.* at 23:19-24, 42:19-43:17)

**32.**     The court assigns no weight to Plaintiff's testimony that Poorman also threatened

to shock Plaintiff with the stun cuff if he told anybody in the ambulance about their prior

interaction. (*Id.* at 18:12-19:13)

**33.**     Plaintiff was subsequently transported to the hospital by ambulance. (D.I. 67 at §

III.A.9; 3/3/2022 Tr. at 23:5-7, 42:1-6)  Poorman accompanied Plaintiff to the hospital.

(3/3/2022 Tr. at 23:8-11)  Poorman and Plaintiff did not speak to each other in the ambulance.

(*Id.* at 19:14-18)

**34.**     Plaintiff did not inform the medical personnel in the ambulance about being

beaten by Poorman. (*Id.* at 19:8-13, 23:12-16)

**35.**     The stun cuff was never used. (*Id.* at 23:25-24:2)

**36.**     Plaintiff does not seek damages from Poorman for any injuries he sustained from

falling off the roof in the attempted escape. (D.I. 67 at § III.A, ¶¶ 9-10)  Plaintiff admitted that

he has "no way of ascertaining . . . whether [Poorman] caused or exacerbated any of [his]

injuries." (3/3/2022 Tr. at 26:13-14)

## III.    CONCLUSIONS OF LAW

### A.    Excessive Force Pursuant to 42 U.S.C. § 1983

Plaintiff bears the burden of proof by a preponderance of the evidence on the elements of

a claim under 42 U.S.C. § 1983. *See Ware v. Riley*, 25 F. Supp. 3d 492, 499 (D. Del. 2014)

(citing *Groman v. Twp. of Manalapan*, 47 F.3d 628, 633 (3d Cir. 1995)).  "[A] party proves a

fact by a preponderance of the evidence when he proves that the fact's existence is more likely

than not." *Doe v. Princeton Univ.*, 30 F.4th 335, 347 (3d Cir. 2022) (quoting *Greenwich*

*Collieries v. Dir., Office of Workers' Comp. Programs*, 990 F.2d 730, 736 (3d Cir. 1993), *aff'd*,

512 U.S. 267 (1994)).  Although the evidence need not be "overwhelming," "a plaintiff may not

prevail where the evidence is closely balanced or inconclusive." *Id.* (quoting *United States v. Ammar*, 714 F.2d 238, 250 (3d Cir. 1983); *Syblis v. Att'y Gen.*, 763 F.3d 348, 357 (3d Cir. 2014)).

### 1.   Legal standard

"To state a claim under 42 U.S.C. § 1983, a plaintiff must allege the violation of a right secured by the Constitution and laws of the United States, and must show that the alleged deprivation was committed by a person acting under color of state law." *West v. Atkins*, 487 U.S. 42, 48 (1988); *see also Porter v. Pa. Dep't of Corrections*, 974 F.3d 431, 437 (3d Cir. 2020).  In analyzing a § 1983 claim, the court must first determine whether the plaintiff has alleged a violation of a constitutional right, and then establish whether the defendant was personally involved in the alleged violation. *Chavarriaga v. N.J. Dep't of Corrections*, 806 F.3d 210, 222 (3d Cir. 2015) (internal quotation marks and citations omitted).

Plaintiff claims that Poorman violated his constitutional rights under the Eighth and Fourteenth Amendments by using excessive force against him. (D.I. 74 at 1)  The Eighth Amendment governs excessive force claims brought by a convicted inmate. *See Whitley v. Albers*, 475 U.S. 312, 327 (1986) ("[T]he Eighth Amendment . . serves as the primary source of substantive protection to convicted prisoners in cases . . . where the deliberate use of force is challenged as excessive and unjustified."). "In the context of an excessive force claim by an inmate, substantive due process [under the Fourteenth Amendment] affords no greater protection than does the Eighth Amendment." *McChristian v. Hampton*, 48 F.3d 1224, 1224 (8th Cir. 1995) (citing *Whitley*, 475 U.S. at 327); *see also Jacobs v. Cumberland County*, 8 F.4th 187, 193-94 (3d Cir. 2021) (distinguishing between the Fourteenth Amendment's protection of

8

pretrial detainees, and the Eighth Amendment's protection of convicted prisoners, in the context

of claims for excessive force).

The Eighth Amendment prohibits the infliction of cruel and unusual punishments on any

person convicted of a crime. U.S. Const. amend. VIII. Use of excessive force by a prison

official, when accompanied by a certain mental state, violates the Eighth Amendment. *See*

*Whitley*, 475 U.S. at 319-21. The analysis requires evaluation of a subjective prong and an

objective prong. *See Powell v. Phelps*, C.A. No. 10-996-LPS, 2015 WL 1383587, at *3 (D. Del.

Mar. 23, 2015) (citing *Hudson v. McMillian*, 503 U.S. 1, 5 (1992)). To satisfy the subjective

component, the court must determine "whether force was applied in a good-faith effort to

maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S.

at 7; *see Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009). The objective component is met

when "the inmate's injury was more than *de minimis*." *Ricks v. Shover*, 891 F.3d 468, 480 (3d

Cir. 2018).

### a.  Subjective inquiry

The subjective reasonableness of an officer's use of force depends on the factual context

of the incident and should be "judged from the perspective of a reasonable officer on the scene,

rather than with the 20/20 vision of hindsight." *Graham v. Connor*, 490 U.S. 386, 396 (1989).

To determine whether force was used in good faith to maintain or restore order, or whether force

was applied maliciously and sadistically to cause harm, courts consider five factors (the "*Whitley*

factors"): "(1) the need for the application of force; (2) the relationship between the need and the

amount of force that was used; (3) the extent of injury inflicted; (4) the extent of the threat to the

safety of staff and inmates, as reasonably perceived by the responsible officials on the basis of

the facts known to them; and (5) any efforts made to temper the severity of a forceful response." *Giles v. Kearney*, 571 F.3d 318, 326 (3d Cir. 2009) (quoting *Whitley*, 475 U.S. at 319).

Factual considerations that often influence a court's analysis of the first, second, and fourth *Whitley* factors include whether the inmate creates a disturbance, resists, or fails to follow orders, and whether the inmate is restrained. *See Brooks v. Kyler*, 204 F.3d 102, 106 (3d Cir. 2000) (balancing consideration of inmate's failure to follow orders against the fact that he was shackled at the time force was applied). Courts may also consider the number of officers present to control the inmate and an inmate's reduced physical capacity. *See Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (concluding that use of force against handcuffed inmate who was under the control of six officers was "repugnant to the conscience of mankind."). With respect to the third *Whitley* factor, "the extent of an injury provides a means of assessing the legitimacy and scope of the force[.]" *Brooks*, 204 F.3d at 108. However, the Supreme Court has emphasized that proof of a serious injury is not required to establish an Eighth Amendment excessive force violation, and the Third Circuit has instructed that the analysis "must be driven by the extent of the force and the circumstances in which it is applied; not by the resulting injuries." *Smith*, 293 F.3d at 648; *see Hudson*, 503 U.S. at 4.

### b. Objective inquiry

Under the objective prong of the § 1983 inquiry, the plaintiff must show that the alleged wrongdoing was "harmful enough to establish a constitutional violation." *Hudson*, 503 U.S. at 8 (internal quotation marks and citations omitted). The level of harm required to establish a violation of the Eighth Amendment depends on the type of claim at issue. *Id.* Claims seeking redress for conditions of confinement or deliberate indifference to medical needs require a showing of significant harm because "routine discomfort is part of the penalty that criminal

10

offenders pay for their offenses against society[.]" *Id.* at 9 (internal quotation marks and citations omitted).

In the context of an Eighth Amendment excessive force claim, however, proof of significant injury is not an independent requirement. *Brooks*, 204 F.3d at 104. Indeed, "there is no fixed minimum quantum of injury that a prisoner must prove that he suffered through objective or independent evidence" to prove an excessive force claim. *Id.* This is because "contemporary standards of decency always are violated" when a prison official uses force to maliciously and sadistically cause harm, regardless of whether the resultant injury is significant. *Hudson*, 503 U.S. at 9.

### 2.    Analysis

Plaintiff has not met his burden to show that Poorman used excessive force pursuant to § 1983 during the Handcuff Incident, the Fence Incident, the Patrol Car Incident, the Pepper Spray Incident, or the Stun Cuff Incident.

#### a.   Handcuff Incident

Poorman did not use excessive force against Plaintiff when he lifted Plaintiff off the ground by his bicep. Plaintiff claims that Poorman lifted him off the ground by the chain of his handcuffs, which exacerbated the pain of his visibly broken wrist. (3/3/2022 Tr. at 9:20-10:10) The court does not find Plaintiff's account credible. The testimony of other witnesses confirms they saw Poorman lift Plaintiff by his bicep. (*Id.* at 34:17-35:20, 74:2-20, 94:8-95:9, 108:20-109:3) Plaintiff's testimony reveals that the very act of being handcuffed caused him increased pain. (*Id.* at 7:21-24) He does not assert excessive force was used to handcuff him or because he remained in handcuffs for the duration of his apprehension.

Under the *Whitley* factors, the court concludes that it was necessary to move Plaintiff from the ground to transport him back to the facility, and lifting Plaintiff by his bicep was a reasonable means of achieving that goal. *See Wesley v. Dombrowski*, 2007 WL 2571525, at *8 (E.D. Pa. Aug. 31, 2007) (finding no excessive force where the defendants placed their hands beneath the plaintiff's armpits and lifted him to his feet). Plaintiff does not identify any pain or injury to his bicep, and it was not necessary for Poorman to temper the severity of a response that was not overly forceful in the first instance.

### b. Fence Incident

Poorman did not use excessive force against Plaintiff when he leaned Plaintiff against the fence. As with the Handcuff Incident, Plaintiff's account that Poorman repeatedly smashed his face into the fence is not credible or supported by the testimony of the other witnesses. (3/3/2022 Tr. at 34:17-35:20, 74:2-20, 94:8-95:9, 108:20-109:3) Rather, the evidence shows it is more likely than not that Poorman leaned Plaintiff on the fence after lifting him off the ground. (*Id.*) With his hands cuffed behind him, Plaintiff had no means to brace himself against the fence and his face likely made contact with it, but not due to the use of excessive force by Poorman. This act was another step in delivering Plaintiff back to the correctional facility after his escape attempt, and it cannot reasonably be characterized as malicious or sadistic for purposes of the § 1983 inquiry.

### c. Patrol Car Incident

Plaintiff has not proven by a preponderance of the evidence that Poorman used excessive force in violation of his Eighth Amendment rights during the Patrol Car Incident. Plaintiff's claims of excessive force arise from his allegation that Poorman punched him in the neck and torso after placing him in the patrol car. However, Plaintiff's account that Poorman jumped on

12

top of him in the back of the patrol car and punched him repeatedly is not credible. (3/3/2022 Tr. at 13:3-14:23)

The court gives no weight to Plaintiff's testimony because it is internally inconsistent and cannot be reconciled with any other evidence. Plaintiff altered his testimony at trial, first giving an account that Poorman "physically put[ ] [him] into the back seat and then [got] in the car on top of [him]." (*Id.* at 13:3-5) Moments later, Plaintiff testified that Poorman "shoved" him into the back seat and shut the door. (*Id.* at 13:15-17) Without stating how much time passed after the door was shut, Plaintiff testified Poorman opened the door, re-entered the patrol car, and assaulted Plaintiff. (*Id.* at 14:3-4) No other witness testified that Poorman entered the patrol car twice. Plaintiff also testified that Poorman closed the door a second time so that Lopez could pepper spray Plaintiff's face from the opposite side of the vehicle. (*Id.* at 16:14-22) Plaintiff never testified about the presence of other officers in proximity to that door during the alleged assault on Plaintiff.

The court assigns no weight to Poorman's testimony about the proximity of the guardrail to the car. (*Id.* at 38:22-24, 50:14-23) However, conflicting evidence on the proximity of the guardrail to the patrol car used to transport Plaintiff is not the tipping point for discounting Poorman's credibility concerning his interaction with Plaintiff in the patrol car. Even if the court rejects Poorman's testimony that he and Plaintiff fell into the back of the vehicle due to tripping over the guardrail, the weight of the evidence supports the conclusion that there was a struggle to place Plaintiff in the patrol car.

Esposito testified that he grabbed Plaintiff's bicep to help him over the guardrail. (*Id.* at 72:12-17) Plaintiff admits it was difficult for him to go over the guardrail because he was in pain and his body "didn't seem to bend properly." (*Id.* at 12:12-17) This is consistent with

13

Poorman's testimony that Plaintiff kept dropping his weight as they walked towards the guardrail. (*Id.* at 38:1-10)

The weight of the evidence confirms Plaintiff also struggled getting into the patrol car. The officer witnesses consistently testified that there was a commotion when Poorman was securing Plaintiff in the patrol car. (*Id.* at 39:12-14, 98:7-22) Esposito testified he heard a commotion and heard that Plaintiff could not get into the car. (*Id.* at 78:8-11) Lopez confirmed there was a struggle to get Plaintiff into the vehicle, and he assisted Poorman by grabbing Plaintiff's shirt from the other side of the vehicle and pulling him through to the other end. (*Id.* at 98:7-100:5) Lopez's testimony is more persuasive than Plaintiff's testimony. Plaintiff's testimony that the door opposite the side where Poorman entered was closed until Lopez opened it to use pepper spray on Plaintiff is not credible.

Regardless of whether Plaintiff was shoved into the vehicle or whether Poorman tripped on top of him, there was no excessive force used. Plaintiff does not claim that being shoved into the back seat amounted to excessive force, and the *Whitley* factors support the conclusion that the level of force used by Poorman when he shoved Plaintiff into the patrol car was necessary to secure a flailing and kicking prison escapee in the vehicle. *See Whitley*, 475 U.S. at 321-22.

No one, not even Plaintiff, knew the extent of his injuries from falling off the roof at the time he was put in the patrol car. (3/3/2022 Tr. at 8:16-19, 9:13-16, 13:10-13, 16:7-10, 24:4-11, 36:7-12, 37:5-11, 47:22-48:1, 112:10-16) The evidence establishes that it was difficult for Poorman to secure Plaintiff in the vehicle and he needed Lopez's help to do so. (*Id.* at 39:12-14, 98:7-22, 99:16-23) Moreover, Plaintiff admits he did not tell the officers that he was having difficulty sitting in the back seat. (*Id.* at 20:13-16) Under these circumstances, the force used by Poorman to secure Plaintiff in the vehicle was reasonable and did not result in any discernable

14

injuries. (*Id.* at 14:20-23, 26:7-14); *see Smith v. Mensinger*, 293 F.3d 641, 649 (3d Cir. 2002) (explaining that minor injuries could diminish the credibility of a plaintiff's testimony or indicate that "the force used was not of a constitutional dimension.").

Plaintiff has failed to prove his excessive force claim by a preponderance of the evidence because the weight of the evidence establishes that Poorman did not use excessive force to secure Plaintiff in the patrol car.

### d. Pepper Spray Incident

Poorman did not use excessive force against Plaintiff in the Pepper Spray Incident. "[A] supervisor may be personally liable under § 1983 if he or she participated in violating the plaintiff's rights, directed others to violate them, or, as the person in charge, had knowledge of and acquiesced in his subordinates' violations." *A.M. ex rel. J.M.K. v. Luzerne Cty. Juvenile Det. Ctr.*, 372 F.3d 572, 586 (3d Cir. 2004); *see Santiago v. Warminster Twp.*, 629 F.3d 121, 130 (3d Cir. 2010). There is no dispute in this case that Poorman did not deploy the pepper spray. (3/3/2022 Tr. at 16:19-22, 41:13-17, 81:4-6, 99:21-23) Thus, the issue before the court is whether Poorman directed Lopez to deploy the pepper spray or acquiesced in Lopez's use of the pepper spray.

Plaintiff's testimony that Poorman ordered Lopez to spray him with pepper spray is not supported by a preponderance of the evidence. (3/3/2022 Tr. at 16:14-18) Poorman, Esposito, and Lopez each testified that it was Lopez's decision to use pepper spray on Plaintiff "[b]ecause Offender Green and Sergeant Poorman at the time were having a struggle," and Lopez sought "[t]o get Offender Green completely in the vehicle so we could secure the vehicle." (*Id.* at 99:25-100:5; *see also id.* at 41:23-25, 74:12-16, 100:6-8)

15

A preponderance of the evidence also shows that Poorman did not know Lopez deployed pepper spray until well after the incident occurred. (*Id.* at 46:19-24) Both Plaintiff and Poorman testified that Poorman had exited the vehicle and closed the door before Lopez deployed the pepper spray. (*Id.* at 16:19-22, 40:2-41:22) Consequently, Plaintiff has failed to meet his burden to show that Poorman violated his constitutional rights during the Pepper Spray Incident. *See Evancho v. Fisher*, 423 F.3d 347, 353 (3d Cir. 2005) (explaining that individual government defendant in civil rights action must have personal involvement in alleged wrongdoing, which may be shown through allegations of personal direction or actual knowledge and acquiescence).

### e. Stun Cuff Incident

Plaintiff has not met his burden to prove that Poorman used excessive force in violation of his constitutional rights during the Stun Cuff Incident. There is no dispute that Poorman did not shock Plaintiff with the stun cuff. (3/3/2022 Tr. at 23:25-24:2) Instead, Plaintiff testified that Poorman verbally threatened to shock him with the stun cuff if he told the medical personnel in the ambulance about his prior interaction with Poorman. (*Id.* at 18:12-15) But verbal harassment alone is not actionable under the Eighth Amendment. *See Gannaway v. Berks County Prison*, 439 F. App'x 86, 91 (3d Cir. 2011) (holding that a claim of verbal harassment, standing alone, does not constitute cruel and unusual punishment). Therefore, Plaintiff cannot prevail on his § 1983 excessive force claim as it pertains to the Stun Cuff Incident.

### B.   State Law Tort Claims

#### 1.   Assault and battery

Plaintiff's complaint alleges that Poorman's conduct constituted assault and battery. (D.I. 1-1 at ¶ 22) "To bring a successful claim for assault in Delaware, plaintiff must prove that a specific defendant intentionally caused plaintiff to be in fear of an immediate harmful or

16

offensive contact, without plaintiff's consent." *Grubbs v. Univ. of Del. Police Dep't*, 174 F. Supp. 3d 839, 860 (D. Del. 2015) (quoting *Smith v. Del. State Police*, 2014 WL 3360173, at *6 (Del. Super. Ct. July 8, 2014)). "The tort of battery is 'the intentional, unpermitted contact upon the person of another which is harmful or offensive.'" *Id.* (quoting *Hunt ex rel. DeSombre v. State*, 69 A.3d 360, 368 (Del. 2013)). Th requisite intent is "the intent to make contact with the person, not the intent to cause harm." *In re Taylor v. Barwick*, 1997 WL 527970, at *3 (Del. Super. Ct. Jan. 10, 1997). Plaintiff bears the burden of proof by a preponderance of the evidence to prevail on his causes of action for assault and battery under Delaware law. *See Vansant v. Kowalewski*, 90 A. 421, 423 (Del. Super. Ct. 1914).

Plaintiff has failed to prove his cause of action for battery by a preponderance of the evidence. For the reasons set forth at § III.B.2, *supra*, the weight of the evidence shows that Poorman did not use excessive force against Plaintiff. This analysis further demonstrates that Poorman did not make contact with Plaintiff with the intent to cause harm.

Plaintiff has also failed to prove his cause of action for assault by a preponderance of the evidence. Plaintiff testified that Poorman threatened to shock him with a stun cuff if Plaintiff informed the medical personnel that Poorman had beaten him. (3/3/2022 Tr. at 18:12-15) The court does not find Plaintiff's testimony credible on this point. Plaintiff never informed anyone in the ambulance of the alleged threat and was not shocked with the stun cuff at any time by Poorman. (*Id.* at 23:25-24:2) Poorman's interaction with Plaintiff ended once the ambulance delivered Plaintiff to the hospital. (*Id.* at 19:16-22)

Having concluded that Poorman is not liable for assault or battery, the court need not reach Poorman's arguments regarding the applicability of the immunity provisions under the

Delaware State Tort Claims Act ("DTCA"), 10 *Del. C.* § 4001 *et seq.*, and 11 *Del. C.* § 467(d), which permits a prison guard to use force to prevent an inmate's escape. (D.I. 73 at 10-11)

### 2. Intentional Infliction of Emotional Distress

"A claim for intentional infliction of emotional distress . . . requires proof that [the defendant] intentionally engaged in extreme or outrageous conduct that caused severe emotional distress." *Hunt v. State, Dep't of Safety & Homeland Sec.*, 69 A.3d 360, 367 (Del. 2013). Liability only arises if the emotional distress is so severe that "no reasonable man could be expected to endure it." *Dayton v. Collison*, 2020 WL 3412701, at *12 (Del. Super. Ct. June 22, 2020) (quoting *Mattern v. Hudson*, 532 A.2d 85, 86 (Del. Super. Ct. Apr. 28, 1987)). Plaintiff bears the burden of proving the elements of a cause of action for intentional infliction of emotional distress by a preponderance of the evidence. *See Jagger v. Schiavello*, 93 A.3d 656, 660 (Del. Super. Ct. 2014).

Plaintiff has not met his burden of showing that Poorman's conduct caused severe emotional distress. The only portion of Plaintiff's trial testimony that touches on the emotional repercussions of the incident does not establish the requisite level of severity:

> QUESTION: Did you have any concern or fear at that point because of the punches?
>
> ANSWER: Well, yes, because I – I thought that me alerting the officers was going to be a safe haven to the situation that got me out there to begin with, and it was contrary to that.

(3/3/2022 Tr. at 14:24-15:4) There is no other evidence on the trial record documenting any severe emotional distress experienced by Plaintiff. Consequently, Plaintiff cannot prevail on his cause of action for intentional infliction of emotional distress.

**C.    Renewed Motion for Judgment as a Matter of Law**

Poorman's renewed motion for judgment as a matter of law under Rule 41(b), which the court construes as a motion for judgment on partial findings under Rule 52(c),[3] is moot because the court enters judgment in favor of Poorman and against Plaintiff after consideration of all the evidence.

## IV.    CONCLUSION

For the foregoing reasons, the court finds that:

1.  Plaintiff has failed to prove by a preponderance of the evidence that Poorman used excessive force in violation of Plaintiff's Eighth Amendment rights.

2.  Plaintiff has failed to prove by a preponderance of the evidence that Poorman committed the tort of battery under Delaware state law.

3.  Plaintiff has failed to prove by a preponderance of the evidence that Poorman committed the tort of assault under Delaware state law.

4.  Plaintiff has failed to prove by a preponderance of the evidence that Poorman committed the tort of intentional infliction of emotional distress under Delaware state law.

---

[3] Poorman seeks judgment as a matter of law pursuant to Federal Rule of Civil Procedure 41(b), citing the Third Circuit's decision in *UAW v. Mack Trucks, Inc.* (D.I. 73 at 5) (citing *UAW v. Mack Trucks, Inc.*, 917 F.2d 107 (3d Cir. 1990)). But a year after the *UAW* decision, Rule 41 was amended to remove the language "that authorized the use of this rule as a means of terminating a non-jury action on the merits when the plaintiff has failed to carry a burden of proof in presenting the plaintiff's case." Fed. R. Civ. P. 41 advisory committee's note to 1991 amendment. Rule 52(c) now governs a judgment on partial findings in nonjury trials. *Id.*

An Order consistent with this Opinion shall issue.

Dated: July 7, 2022

_____
Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE