IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CARY GREEN )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>PHILLIP POORMAN, LT. GREGORY )<br>ESPOSITO, and SHUKRIYA JENKINS, )<br>)<br>Defendants. ) | Civil Action No. 20-85-SRF |

**OPINION FOLLOWING INQUISITION HEARING**[1]

## I.   INTRODUCTION

Plaintiff Cary Green ("Plaintiff"), an inmate at the Howard R. Young Correctional Center in Wilmington, Delaware, filed this lawsuit in Delaware Superior Court on October 4, 2019. (D.I. 1-1) On January 21, 2020, Poorman and Esposito removed the case to this court because the complaint seeks redress for alleged violations of Plaintiff's civil and constitutional rights. (D.I. 1 at ¶ 6) The complaint alleges claims pursuant to 42 U.S.C. § 1983 by Correctional Officer defendants Phillip Poorman ("Poorman"), Lt. Gregory Esposito ("Esposito"), and Shukriya Jenkins ("Jenkins") relating to events that occurred on October 8, 2017.[2] (D.I. 1-1) On that date, Plaintiff fell from the roof of the prison in an unsuccessful escape attempt, sustaining serious injuries to his back, wrist, and hip.

On January 28, 2021, Plaintiff filed a combined motion against Jenkins for entry of default in appearance and default judgment under Federal Rules of Civil Procedure 55(a) and 55(b)(2), respectively. (D.I. 25) In the motion, Plaintiff asked the court to delay consideration

---

[1] The parties consented to jurisdiction by a U.S. Magistrate Judge on February 8, 2022. (D.I. 60)
[2] The complaint also alleges state law tort claims against defendants Poorman and Esposito relating to the events of October 8, 2017. (D.I. 1-1)

of damages pertaining to the default judgment until after the trial based on his position that "the damages are the same for all defendants." (D.I. 25 at 2) The Clerk of Court entered a default in appearance as to Jenkins pursuant to Rule 55(a) on February 22, 2021. (D.I. 27)

The court entered default judgment against Jenkins under Rule 55(b) on April 16, 2021, specifying that "[t]he jury hearing the case against the remaining defendants will be allowed to determine the amount of damages awarded to plaintiff pursuant to Federal Rule of Civil Procedure 55(b)(2)" based on Plaintiff's representation that "the damages are the same for all defendants." (D.I. 34; D.I. 25 at 2) However, Plaintiff's position on damages changed prior to trial. In February of 2022, the parties jointly waived the right to a jury trial. (D.I. 59) In the joint proposed pretrial order filed the same month, the parties represented that "plaintiff's request for damages against Jenkins includes all of his injuries resulting from the fall from the roof, and not just injuries resulting from Poorman or Esposito violating his civil rights." (D.I. 67 at 12) Accordingly, Plaintiff requested a separate hearing on damages for Jenkins based on his position that "damages against Poorman or Esposito will be significantly different than any hearing on damages against Jenkins." (*Id.*)

Plaintiff's constitutional excessive force and state law tort claims against Poorman proceeded to a one-day bench trial on March 3, 2022. Plaintiff's demand for a default judgment against Jenkins was the subject of a damages inquisition hearing on March 11, 2022. Jenkins was notified of the damages inquisition hearing and was present in the courtroom, but she declined to offer any defense. (D.I. 68 at ¶ 5; 3/11/2022 Tr. at 2:13-3:20; 46:18-21; 50:21-23)

On July 7, 2022, the court issued its Findings of Fact and Conclusions of Law regarding Plaintiff's claims against Poorman. (D.I. 77) The only remaining issue before the court is whether Plaintiff has met his burden to prove that the acts or omissions of defendant Jenkins

2

were a proximate cause of his injuries. Having considered the testimony and evidence presented at the damages inquisition hearing and the applicable law, the court makes the following findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a) and Fed. R. Civ. P. 55.

## II.   FINDINGS OF FACT

### A.   Background Facts[3]

1.   Plaintiff entered the Howard R. Young Correctional Institute ("HRYCI") in Wilmington, Delaware as an inmate on or about May 30, 2017. (D.I. 1-1 at ¶ 3) Plaintiff was an inmate at HRYCI at all times relevant to this action. (*Id.* at ¶ 1)

2.   Jenkins was an employee of the Delaware Department of Correction who worked at HRYCI at all times relevant to this action. (*Id.* at ¶ 2)

3.   Plaintiff was put in a cell with inmate Gerald Nash ("Nash"). (*Id.* at ¶ 3) Nash confided in Plaintiff regarding his illegal activities, and Plaintiff took notes on Nash's disclosures with plans to assist prosecutors. (*Id.*)

4.   Nash discovered Plaintiff's notes on October 8, 2017, threatened Plaintiff with a makeshift weapon, and demanded that Plaintiff help Nash escape from the prison. (*Id.* at ¶¶ 3-4) Nash threatened to kill Plaintiff and his family if Plaintiff refused to assist Nash in his escape attempt. (*Id.* at ¶ 4)

5.   Plaintiff believed Nash's threats and complied with Nash's demands. (*Id.*)

6.   Nash collected the bed linens in the cell and placed them inside a laundry bag. (*Id.* at ¶ 5)

---

[3] The court's Findings of Fact regarding the events of October 8, 2017 are taken from the complaint. "A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *see J & J Sports Prod., Inc. v. Kim*, C.A. No. 14-1170-LPS, 2016 WL 1238223, at *1 (D. Del. Mar. 29, 2016).

7. Nash and Plaintiff exited their cell for recreation. (*Id.*)

8. Jenkins was on-duty at the time. (*Id.* at ¶ 6) Plaintiff did not tell Jenkins about Nash's threats or escape plan because he knew Nash and Jenkins were in a relationship. (*Id.*)

9. Nash instructed Plaintiff to climb onto a basketball rim and form a hole in the fence to gain access to the roof. (*Id.* at ¶ 7) Nash and Plaintiff went back to their cell to retrieve the laundry bag. (*Id.*) Plaintiff put the laundry bag in a laundry cart next to the outside recreation door, and Nash had another inmate bring the laundry bag outside with them. (*Id.*)

10. Jenkins came outside and asked why the laundry bag was outside. (*Id.* at ¶ 8) Nash replied it was his "work out" bag and Jenkins said, "I didn't see anything." (*Id.*) Jenkins went back inside without inspecting or confiscating the laundry bag. (*Id.*)

11. Nash forced Plaintiff onto the roof of the prison with his makeshift knife. (*Id.* at ¶ 9) Nash tied the bed linens together in a makeshift rope, tied one end of the rope to a pipe on the roof, and ordered Plaintiff to climb down. (*Id.*)

12. When Plaintiff grabbed the makeshift rope, it broke immediately, causing him to fall approximately three stories to the ground. (*Id.*) Plaintiff lost consciousness when he landed on the ground. (*Id.*)

13. After regaining consciousness and recognizing the extent of his injuries, Plaintiff tried to get the attention of security staff by shaking and climbing on the outer fence. (*Id.* at ¶¶ 9-10)

14. A number of officers arrived at the scene and took Plaintiff into custody. (*Id.* at ¶¶ 10-11)

15. Jenkins was not present when Esposito, Poorman, and other security staff arrived at the scene. (*Id.* at ¶¶ 9-11) Plaintiff alleges that Poorman pulled Plaintiff to his feet, repeatedly

4

pushed him face first into the fence, punched him after placing him in the patrol car, ordered another officer to pepper spray him, and threatened him with further violence. (*Id.* at ¶¶ 11-13)

### B. Green's Injuries

**16.** Plaintiff testified that he experienced widespread pain through his back, arm, and legs, his left wrist bone protruded from his arm, and he had difficulty breathing from the pain when he awoke after his fall. (3/11/2022 Tr. at 7:3-19)

**17.** At Christina Hospital, Plaintiff was subsequently diagnosed with multiple breaks and fractures in his back / spine, an acetabular (hip) fracture, and a broken wrist at both his ulna and radius as a result of the fall. (D.I. 1-1 at ¶ 14; 3/11/2022 Tr. at 47:22-25)

**18.** Plaintiff's severe pain continued during his time at Christiana Hospital. (3/11/2022 Tr. at 9:2-10:6) He testified that he required sedation before he could be moved by staff for MRI imaging, and he was not able to get up out of bed or move around. (*Id.*)

**19.** Plaintiff was discharged from the hospital to the prison infirmary, where he remained isolated and mostly bedridden. (*Id.* at 10:16-11:23, 27:3-25) He was given medication to manage his pain, but the infirmary sometimes changed or temporarily discontinued his medication when it needed to be reordered. (*Id.* at 13:9-14:5, 19:5-20, 25:3-10)

**20.** In the infirmary, Plaintiff began to experience numbness and tingling in his left leg, left foot, left wrist, fingers, and elbow, which continues to this day. (*Id.* at 14:15-15:1, 19:21-20:4, 22:16-21) Plaintiff continues to have limited mobility in his left wrist and severe pain in his lower back. (*Id.* at 12:18-21, 17:3-15, 19:21-20:4) The numbness and pain in his left leg caused him to have several falls. (*Id.* at 26:1-9, 44:10-20)

**21.** Plaintiff also continues to have nightmares in which he relived the experience of the fall. (*Id.* at 22:2-15)

5

**22.** Plaintiff was discharged from the infirmary to a solitary maximum-security cell, where he remained until 2019. (*Id.* at 28:14-29:22, 43:4-8) He was tapered off his opioid pain medications at that time, which exacerbated his pain. (*Id.* at 23-30:7)

**23.** Plaintiff is unable to play sports or exercise due to his injuries, and his pain often prevents him from sleeping. (*Id.* at 34:18-22, 36:17-37:5, 45:12-23)

### III. CONCLUSIONS OF LAW

Federal Rule of Civil Procedure 55(b)(2) provides that a district court may enter default judgment against a party when default has been entered by the Clerk of Court. Fed. R. Civ. P. 55(b). Here, the Clerk of Court entered default against Jenkins due to her failure to plead or otherwise defend the case, and liability has been conclusively established. (D.I. 27; D.I. 34) "A consequence of the entry of a default judgment is that the factual allegations of the complaint, except those relating to the amount of damages, will be taken as true." *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir. 1990); *see J & J Sports Prod., Inc. v. Kim*, C.A. No. 14-1170-LPS, 2016 WL 1238223, at *1 (D. Del. Mar. 29, 2016).

The complaint asserts the following claims against Jenkins: (1) violations of Plaintiff's civil rights pursuant to § 1983 and his Eighth Amendment right to be free of cruel and unusual punishment based upon Jenkins' failure to act, thus knowingly allowing Plaintiff "to remain in harm's way" of the danger posed by his cellmate, Nash, and Jenkins' reckless indifference to the danger Nash posed to Plaintiff (D.I. 1-1 at ¶¶ 24-25); and (2) constitutional violations of Plaintiff's civil rights resulting from co-defendant Poorman's use of excessive force, assault, battery, and intentional infliction of emotional distress, that Jenkins ratified or in which she acquiesced (*id.* at ¶ 26).

6

Although default has been entered, Plaintiff bears the burden to prove causation and damages. *See Fehlhaber v. Indian Trails, Inc.*, 425 F.2d 715, 717 (3d Cir. 1970); *Kipp v. Metz*, 2013 WL 2285980, at *2 (W.D. Pa. May 23, 2013). Plaintiff must show that Jenkins' act or omission played a substantial part in bringing about his injuries. *See Hedges v. Musco*, 204 F.3d 109, 121 (3d Cir. 2000) ("It is axiomatic that [a] § 1983 action, like its state tort analogs, employs the principle of proximate causation."); *see also Bielevicz v. Dubinon*, 915 F.2d 845, 853 (3d Cir. 1990) (discussing affirmative link between police department custom and unlawful arrest of plaintiffs); *Ramos-Vazquez v. PrimeCare Med., Inc.*, 2010 WL 3855546, at *7-8 (E.D. Pa. Sept. 30, 2010) (requiring a reasonable causal connection between the defendants' actions and the plaintiff's injuries). Accepting as true the factual averments in the complaint and evidence introduced at the inquisition hearing, the court concludes Plaintiff has not met his burden of proving that Jenkins' conduct proximately caused his injuries.

Plaintiff seeks compensatory damages from Jenkins for: (1) physical injuries resulting from Plaintiff's fall from the roof and his encounter with Poorman; and (2) mental and emotional pain, anguish, and humiliation. (D.I. 1-1 at ¶ 26) Plaintiff also seeks an award of punitive damages and attorney's fees and costs. (*Id.*)

Plaintiff's injuries are not a direct and foreseeable consequence of Jenkins' failure to inspect and/or confiscate the laundry bag. Plaintiff has failed to demonstrate that Jenkins' omission was a proximate cause of a violation of his federally protected right to be free of cruel and unusual punishment. The complaint does not allege that Jenkins knew Nash was threatening Plaintiff or that she was aware of Nash's plan to escape from prison when she saw the laundry bag outside. To the contrary, the complaint confirms that Jenkins was unaware and Plaintiff chose not to seek her aid: "Green was scared to tell [Jenkins] what was happening, because he

7

knew she was having a relationship with Nash." (D.I. 1-1 at ¶ 6) On these facts, there is no causal connection between Jenkins' failure to act and/or reckless indifference and injuries sustained by Plaintiff when he fell from the roof. The inherently illegal nature of Plaintiff's escape attempt further supports a conclusion that Plaintiff's own actions following the appearance of the laundry bag were a superseding cause of his injuries. *See Johnson v. City of Phila.*, 837 F.3d 343, 352 (3d Cir. 2016) ("While there is no precise test for determining when a civilian's intervening acts will constitute a superseding cause of his own injury, relevant considerations include . . . whether the civilian's intervening acts are themselves inherently wrongful or illegal[.]"). To the extent that Jenkins committed any constitutional violation by failing to inspect the laundry bag, the causal chain was severed by Nash's tortious conduct in threatening and coercing Plaintiff to escape and Plaintiff's own conduct in climbing down from the prison roof on a makeshift rope fashioned by Nash that could not support Plaintiff's weight, and from which he fell and was injured. *See id.*

The causal connection is even more remote between Jenkins' act or omission and the aggravation of injuries Plaintiff claims he suffered when Poorman responded with other Correctional Officers (but not Jenkins) to take Plaintiff into custody after his fall. The complaint does not allege that Jenkins was present at any time during the interactions between Plaintiff and Poorman. Plaintiff's apprehension by Poorman and other officers of the prison is a separate and intervening event which breaks the causal chain. Moreover, the court has issued findings of fact and conclusions of law and has entered judgment in favor of Poorman and against Plaintiff.

## IV. CONCLUSION

The court's April 15, 2021 Order awarded judgment by default against Jenkins under Rule 55(b)(2) without reaching a determination on an award of damages. (D.I. 34) For the

foregoing reasons, the court finds and concludes that Plaintiff has not met his burden to prove that an act or omission of Jenkins was a proximate cause of his injuries. The court finds and concludes that Plaintiff's injuries were caused by the tortious conduct of his cellmate, Nash, and by Plaintiff's own attempt at an illegal escape from prison. Consequently, Plaintiff shall be awarded zero dollars in damages against Jenkins. An Order consistent with this Opinion shall issue.

Dated: July 7, 2022

Sherry R. Fallon
UNITED STATES MAGISTRATE JUDGE

9